# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL CASE NO. 1:10cv145
## [Criminal Case No. 1:06cr25]

| | |
|---|---|
| DAVID ALLEN TATE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** is before the Court on the Petitioner's Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1].

## PROCEDURAL HISTORY

On April 4, 2006, the Petitioner was charged in a one count bill of indictment with illegal possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). [Criminal Case No. 1:06cr25, Doc. 1]. The Petitioner was found guilty by jury verdict in July 2006. On July 2, 2007, the Petitioner was sentenced to 110 months of imprisonment. [Id., Doc. 38]. He filed a direct appeal from his conviction and sentence. [Id., Doc.

40].[1]

In ruling on the Petitioner's appeal, the United States Fourth Circuit Court of Appeals noted that although the Petitioner had been advised of his right to file a *pro se* supplemental brief, he had not done so. United States v. Tate, 327 Fed.Appx. 411 (4th Cir. 2009). Having reviewed the record in compliance with Anders,[2] the Fourth Circuit was unable to identify any meritorious issues for appeal. The Circuit ruled:

> We conclude that the evidence was sufficient to sustain Tate's conviction. Officers executed a search warrant at a residence, where they discovered a loaded revolver in a clothes basket. Tate admitted to authorities that he had agreed to hold the gun for another individual. It was stipulated that Tate had been convicted of an offense punishable by a term of imprisonment of more than one year and that the gun in question had traveled in interstate commerce. We further conclude that Tate's sentence was procedurally and substantively reasonable. We note that the court correctly calculated the Guidelines range, considered the 18 U.S.C. §3553(a) (2006) factors, and adequately stated its reasons for imposing sentence.

Id., at 412.

On July 9, 2010, the Petitioner delivered the present motion pursuant to §2255 to prison authorities for mailing. [Doc. 1]. The motion, filed on July 15, 2010, was timely. Clay v. United States, 537 U.S. 522, 123 S.Ct. 1072, 155

---

[1] The sentence was subsequently reduced to 88 months pursuant to Petitioner's motion. [Doc. 66].

[2] Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

2

L.Ed.2d 88 (2003). The Petitioner claims that his trial attorney provided ineffective assistance of counsel by failing to challenge the validity of the search warrant which resulted in the discovery of the gun; failing to "properly challenge the evidentiary matter," and failing to perform adequate pretrial investigation and research. [Doc. 1, at 4; Doc. 1-1, at 1].

## STANDARD OF REVIEW

A prisoner in federal custody may attack his conviction and sentence on the grounds that it is in violation of the Constitution or United States law, was imposed without jurisdiction, exceeds the maximum penalty, or otherwise is subject to collateral attack. 28 U.S.C. § 2255. Pursuant to the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate. Rule 4(b), <u>Rules Governing Section 2255 Proceedings for the United States District Courts</u>. "If it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge *must* dismiss the motion[.]" <u>Id</u>. (emphasis provided). The Court has reviewed the Petitioner's motion and the record of his criminal proceedings and enters summary dismissal for the reasons stated herein.

The Supreme Court has stated the test for determining whether a defendant received adequate assistance of counsel.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Unless a defendant makes both showings, his claim of ineffective assistance of counsel must fail. Id. Thus, a defendant must show counsel's performance fell below objective standards of reasonableness, and, that but for his conduct, there was a reasonable probability the result of the prosecution would have been different. Id., at 688.

## EVIDENCE PRESENTED AT TRIAL

Officer Dellinger of the Morganton Police Department testified that between 9:30 and 10:00 a.m. on November 22, 2005, he and another officer, Officer Lawing, went to 101 Goodson Avenue in Morganton, the residence of Sonya Michaux, to "execute a warrant for arrest." [Criminal Case No. 1:06cr25, Doc. 53, at 78-79]. Dellinger testified that the Petitioner was inside the residence and came to the front window at which point Officer Lawing advised they were there to serve the warrant on Michaux. [Id., Doc. 53, at 79-80]. Dellinger further testified that the Petitioner then opened the door for the

4

officers who entered the house and encountered Michaux in the living room. [Id.]. Michaux had a brief struggle with the officers during her arrest and the Petitioner became involved as well. [Id., Doc. 53, at 80-81]. This occurred inside the house according to Dellinger's testimony. [Id.]. Because the Petitioner interfered with the arrest and actually had a struggle inside the house with the officers, he was arrested.[3] [Id.]. The Petitioner's presentence report describes the struggle as occurring inside the house, beginning in the living room, continuing into the bedroom and ending in the kitchen. [Id., Doc. 42, at 4]. After the Petitioner was subdued, a search of his person resulted in the discovery of cocaine base.[4] [Id.].

Officer Dellinger testified that after taking the Petitioner into custody, the officers applied for and obtained a search warrant for the home from Superior Court Judge Robert Ervin. [Id., Doc. 53, at 81]. During the execution of that search warrant, an officer found a loaded .38 caliber Taurus revolver in a laundry basket which was located in the bedroom. [Id., Doc. 53, at 83-84].

The Petitioner signed a review and waiver of his Miranda[5] rights at 12:46

---

[3]In fact, during the struggle, the Petitioner bit the hand of one of the officers on two occasions. [Id., Doc. 53, at 144-45].

[4]A quantity of cocaine base was also found on Michaux when she was arrested and a cocaine base pipe was in plain view. [Id., Doc. 42, at 3-4; Doc. 53, at 81, 144-45; Civil Case No. 1:10cv145, Doc. 1-1, at 6-7].

[5]Miranda v. Arizona, 384 U.S. 436 (1966).

5

p.m. on November 22, 2005. [Id., Doc. 53, at 95]. He was then interviewed by Special Agent Chambliss of the State Bureau of Investigation (SBI). [Id., Doc. 53, at 97-98]. The Petitioner acknowledged that the house at which he had been arrested was his actual residence although it was owned by his sister. [Id., Doc. 53, at 98]. The Petitioner also told the agent that he was holding the gun for another individual, Chip Beck, because police were in the neighborhood looking for Beck who did not want to get caught with the gun. [Id.]. Beck told the Petitioner that the gun was not illegal and the Petitioner placed it in the laundry basket in the house at 101 Goodson Avenue. [Id., Doc. 53, at 99].

The parties stipulated during the trial that at the time in question, the Petitioner had been convicted of an offense punishable by imprisonment for more than one year. [Id., Doc. 53, at 109]. They also stipulated that the firearm in question had been shipped or transported in interstate or foreign commerce. [Id.]. These stipulations were read to the jury as part of the Government's case. [Id.].

The defense presented the testimony of Yvonne Moore, who was at the Petitioner's home the night before the arrest. [Id., Doc. 53, at 110-112]. Moore testified that Chip Beck was there along with her boyfriend, George Smith. [Id.]. Beck offered to sell the gun at issue to George Smith who gave

6

Beck some money and took the gun. [Id.]. Moore, who was a convicted felon herself, told Smith that they did not need to have a gun in the house. [Id.]. Moore testified that she had twice been convicted of felonies; larceny and obtaining property by false pretenses. [Id., Doc. 53, at 112]. Moore and Smith left the house that night and went to Charlotte. [Id., Doc. 53, at 113]. She did not see the gun in the car that they drove. [Id.]. Moore also testified that the Petitioner lived at a different place with his sister, not with Michaux. [Id. at 115].

The Petitioner's sister, Lizzie Tate, who is also a convicted felon, testified that the Petitioner lived in a basement apartment at her home on Roper Street. [Id., Doc. 53, at 129, 133]. Although the Petitioner received his mail at the Roper Street address, he often spent nights at Michaux's home since they were dating and he was working on the house. [Id., Doc. 53, at 130]. Lizzie Tate testified that her brother Robert owned the Goodson Avenue house although she had signed for the mortgage. [Id., Doc. 53, at 131]. They let Michaux live there rent free. [Id.]. Lizzie Tate testified that she had been convicted of three counts of possession with intent to sell cocaine. [Id., Doc. 53, at 133].

The Petitioner testified at his trial that he did not live at the Goodson Avenue residence but had been living with his sister [Id., Doc. 53, at 134 -

7

135]. The Petitioner testified that on the day before his arrest, Michaux had people over to visit at her home and Chip Beck brought the gun with him. [Id., Doc. 53, at 136]. The Petitioner said that when he went to the bedroom to watch television, Beck pulled out the gun and laid it on the Petitioner's lap. [Id.]. The Petitioner told Beck to get the gun out of the house because both he and Michaux were convicted felons. [Id., Doc. 53, at 136-37]. The Petitioner also testified that he did not give anyone permission to stash the gun at Michaux's home, he did not do so, and he did not know how the gun came to be in the laundry basket. [Id., Doc. 53, at 137-39].

    The Petitioner testified that when the officers took Michaux from the residence, she screamed that one of them had kicked her in the face. [Id., Doc. 53, at 145-46]. This caused the Petitioner, who was outside of the house, to turn toward her at which point one of the officers attacked him. [Id.]. Although claiming that the arrest occurred outside, not inside the house, the Petitioner does not dispute that, during a pat down after his arrest, the officers found cocaine base on his person. [Doc. 1-1, at 6]. He also does not dispute that Officer Dellinger provided an affidavit in support of the search warrant. [Id., at 6-7]. In that affidavit, Dellinger stated that during a protective sweep of the house after the arrest, officers saw a cocaine base pipe in plain sight. [Id., at 6-7].

Based on this evidence Petitioner was convicted of possession of the firearm in violation of §922(g).

## DISCUSSION

Petitioner claims that his trial counsel failed to provide effective assistance because he failed to move to suppress the fruit of the search. The basis of this argument is that Officer Dellinger testified at trial that the search warrant was executed at ten o'clock in the morning but the warrant was not actually issued by the Judge until that afternoon. Petitioner therefore argues that the officers conducted an illegal search of the house before they had a warrant. That illegal search resulted in the officers' finding of the gun. Had trial counsel moved to suppress that evidence based on an illegal search, he claims, the Petitioner would not have been found guilty.

Officer Dellinger testified at trial that he and Officer Lawing arrived at the Goodson Avenue house between 9:30 and 10:00 a.m. on November 22, 2005 "to execute a warrant for the arrest" of Michaux. [Criminal Case No. 1:06cr25, Doc. 53, at 78]. Dellinger then described the ensuing struggle inside the house among the officers, Michaux and the Petitioner which resulted in the Petitioner's being taken into custody. Dellinger also testified that because of these events, the officers then applied for and obtained a search warrant for the house. Officer Dellinger did not testify at trial that the Petitioner had drugs

on his person or that the officers had seen a cocaine base pipe in plain view inside the house because that would have been unduly prejudicial to the Petitioner. He did, however, include that information in his affidavit which he presented to Judge Ervin in support of the application for a search warrant. Judge Ervin found probable cause to issue that search warrant.

When Officer Dellinger was asked at trial what time the search warrant was executed, he testified "Around 10 o'clock a.m." [Id., Doc. 53, at 82-83]. He also testified that they executed the search warrant not long after taking the Petitioner into custody and that it did not take long to get the search warrant. [Id.]. Based on this statement, the Petitioner claims the officers actually searched the house and found the gun before they had a warrant.

In the direct appeal, however, the Fourth Circuit held that the gun was found by the officers during their execution of the search warrant. Tate, 327 Fed.Appx. at 412. That ruling is the law of the case. The law of the case doctrine "forecloses relitigation of issues expressly or impliedly decided by the appellate court." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). Issues previously decided on direct appeal cannot be recast in the form of a § 2255 motion. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976), *certiorari denied* 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot

be relitigated in a collateral attack under Section 2255."). Accordingly, this claim is procedurally barred.

The Petitioner's argument that trial counsel was ineffective for failing to move to suppress the evidence of the gun fails as well. Petitioner points to no evidence on which trial counsel could have based a motion to suppress. Officer Dellinger's misstatement as to the time of the execution of the search warrant did not occur until he testified at trial. There is no way counsel could have had foreknowledge of this misstatement, and at the time when a motion to suppress could have been filed there was no evidence that the search yielding the gun had been conducted before the search warrant was obtained.

Due to the Government's open file policy for discovery, counsel would have been well aware that the search warrant was applied for and obtained after the initial arrest of the Petitioner. Counsel would also have had access to the statements of Officer Dellinger as well as the Petitioner's confession to SBI Agent Chambliss. Under those circumstances, any motion to suppress would have been futile and frivolous. Failure to make the motion, therefore, cannot constitute ineffective assistance. Holmes v. United States, 281 Fed.Appx. 475, 482 (6th Cir. 2008) (where motion to suppress would have been frivolous, counsel not ineffective); *accord*, United States v. Dunne, 49 Fed.Appx. 700 (9th Cir. 2002); Gooslin v. United States, 2009 WL 1773173

11

(S.D.W.Va. 2009), *appeal dismissed* 377 Fed.Appx. 289 (4th Cir. 2010) (failure to file frivolous motion to suppress was appropriate tactical decision, not ineffective assistance).

On this evidence the Court finds Officer Dellinger's statement that the search warrant was "executed" at ten in the morning was an obvious misstatement. It is clear that he was referring to the execution of the arrest warrant. The Court does not find that the officers conducted a search of the house before the search warrant was obtained.

The Petitioner also claims that there was no probable cause to support the issuance of the search warrant, arguing there was no record of drug trafficking at the Goodson Avenue address and he was arrested outside of the house. He argues that in the absence of probable cause trial counsel should have moved to suppress the fruits of the search. The Petitioner, however, does not dispute that the officers were lawfully inside the Goodson Avenue residence based on a valid warrant issued for the arrest of Michaux. Nor does he dispute the presence of the cocaine base pipe in plain view in the house. "The arrest warrant gave the agents the right to enter [the] house, and the agents properly executed that warrant and saw [the cocaine base pipe] in plain view when they entered. Th[at] provided probable cause for the agents to obtain a search warrant, and the execution of that warrant led to the

12

discovery of other evidence." United States v. Young, 609 F.3d 348, 354 (4th Cir. 2010); United States v. Rose, 321 Fed.Appx. 324, 327 (4th Cir. 2009), *certiorari denied* 130 S.Ct. 215, 175 L.Ed.2d 149 (2009) (when officer is legally in a place from which object is plainly viewed, it may be seized and form basis for search warrant); United States v. Hill, 240 Fed.Appx. 563, 564-65 (4th Cir. 2007) (search warrant issued based on evidence in plain view during execution of arrest warrant). Moreover, when the Petitioner became embroiled in a struggle with the officers, he was lawfully detained and during a pat down, he was found to be in possession of cocaine base. United States v. Story, 327 Fed.Appx. 422, 424 (4th Cir. 2009), *certiorari denied* 130 S.Ct. 424, 175 L.Ed.2d 291 (2009) ("[T]he plain view doctrine authorizes warrantless seizures of incriminating evidence when ... the officer is lawfully in a place from which the object may be plainly viewed[.]"), *quoting* United States v. Jackson, 131 F.3d 1105, 1109 (4th Cir. 1997). The officers also saw a cocaine base pipe in plain view. Id. Therefore, "its discovery was not the result of a search within the meaning of the Fourth Amendment." United States v. Hall, 2010 WL 4009203 (4th Cir. 2010). Either the presence of drugs on the Petitioner's person or the base pipe in plain view constituted sufficient probable cause for the subsequent search warrant for the house. Young, 609 F.3d at 354. A motion to suppress on this ground would have been frivolous.

13

Therefore, counsel was not ineffective for failing to make such a motion.

The Petitioner also claims trial counsel should have investigated the claim that his arrest occurred outside, not inside, the house. This, however, was irrelevant to the existence of probable cause. The officers were lawfully inside the house in order to execute an arrest warrant for Michaux. Young, 609 F.3d at 354. During that arrest, they saw the cocaine base pipe in plain view. Id. That evidence gave the officers probable cause for a search warrant for the residence. Id. The execution of that search warrant led to the discovery of the gun. Id. Thus, even if the Petitioner had actually been outside at the time of his arrest, it would have been of no consequence. Moreover, discovery in the Government's open file showed that both Officer Dellinger and Officer Lawing reported the Petitioner was inside the house, opened the door to them, and then engaged in the struggle inside the house. Story, 327 Fed.Appx. at 424. Therefore, counsel was not ineffective for failing to investigate the location of the arrest.

The Petitioner's last argument is that counsel should have attacked the search warrant as not meeting the particularity requirement because it did not name the legal owners of Goodson Avenue. The search warrant, however, was directed at the residence, not the person of the owner. United States v. Roberson, 332 Fed.Appx. 290, 296 (6th Cir. 2009), *certiorari denied* 130 S.Ct.

14

184, 175 L.Ed.2d 116 (2009). "The Supreme Court has stated that '[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought.'" United States v. Pinson, 321 F.3d 558, 564 (6th Cir. 2003), *certiorari denied* 540 U.S. 912, 124 S.Ct. 292, 157 L.Ed.2d 203 (2003), *quoting* Zurcher v. Stanford Daily, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). "Therefore, an affidavit in support of a search warrant does not need to name ... the owner of the property." Id.; *accord*, United States v. Palega, 556 F.3d 709, 713-14 (8th Cir. 2009), *certiorari denied* 130 S.Ct. 219, 175 L.Ed.2d 152 (2009); Martin v. Indiana State Police, 537 F.Supp.2d 974, 981 (S.D.Ind. 2008) ("The Fourth Amendment does not require that a search warrant name the owners ... of the property to be searched.").

The Court has considered the Petitioner's motion, any attached exhibits, and the record of the prior proceedings. The Court finds that the Petitioner is not entitled to relief and therefore the motion must be dismissed. The Court further finds that the Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (in order to satisfy

15

§ 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong) (citations omitted). As a result, the Court declines to issue a certificate of appealability. Rule 11(a), <u>Rules Governing Section 2255 Proceedings for the United States District Courts</u>.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Petitioner's Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1] is hereby **DENIED** and this action is hereby **DISMISSED**.

Signed: January 18, 2011

Martin Reidinger
United States District Judge